Good morning. May it please the Court, Christopher Stender on behalf of the petitioner Leslie De Nankervis. Thank you. Welcome. On May 28, 2007, Ms. Nankervis, the petitioner, drove her GMC Envoy, a sports utility vehicle, into the San Ysidro Port of Entry. It was 5.17 a.m. in the morning. Inside the vehicle was Leslie, the petitioner, her three children, all three minors, a friend with two minor children. At the primary inspection station, an eighth occupant of the vehicle was discovered, Basti Hernandez, a three-year-old juvenile. After primary inspection, the vehicle was referred over to secondary, where the occupants of the vehicle were taken out, and the minor children, specifically Gloria and Leslie Michelle, then 12- and 14-year-old minors, were separated from their mother. They were held for over 16 hours in question by various CBP officers, Customs and Border Protection officers, and not released until after 9 p.m. They were held in a cold, metal room without beds. They were given no food and little water, and they were threatened and frightened by the officers. Throughout these entire proceedings, and as noted clearly in the reported investigation form G-166 and the record of deportable alien from I-213, the petitioner mother denied ever participating in any way, shape, matter, or form in the smuggling of Basti Hernandez, the smuggled alien. The only evidence comes from the two minor daughters, then age 12 and 14. There are unsworn admissions made and found in the record of deportable alien of the petitioner mother. There's no other evidence that the petitioner engaged in alien smuggling. Notwithstanding this, the immigration judge found that there was clear and convincing evidence of alien smuggling, relying on the two unsworn statements for the minor daughters. There was a videotape taken of the petitioner, but there was no videotape of the interview taken by the two minor daughters. Petitioner mother consistently denied even knowledge that Basti was in the vehicle. Correctly so, the immigration judge put the burden of proof on the government to show removability, but the record evidence clearly falls short of this. Somewhat problematically, and I think what makes the immigration judge's decision fatally flawed, the first immigration judge that made the majority of the findings, is that he required the petitioner to convince him how Basti could have ended up in the vehicle. He required an explanation, and he was not convinced. This is an improper shifting of the burden of proof onto the petitioner, and I think flaws the immigration judge's decision. Unsworn admissions from two minors without a parent or guardian present and without a videotape to verify the integrity of the interview procedure is insufficient to find removability by clear and convincing evidence. This is especially so where the statements have been contradicted, and they were obtained through coercion. They were contradicted by both in-court testimony and by a sworn affidavit from Gloria, the then 14-year-old. She was 18 years old at the time of the interview, excuse me, at the hearing in front of the immigration judge. In order to prove their case, the government called Customs and Border Protection Officer Jesus Saucedo to the stand. He was the only officer that was called. The immigration judge found Officer Saucedo to be more credible than the two minor children. However, the evidence does not support that Officer Saucedo was testifying credibly. When he was asked specific examples of what he remembered, he couldn't frankly remember anything. He couldn't remember whether the interview took place in Spanish or English, whether the children were with the mother or not, whether the children were given blankets. He did not remember threatening, but, of course, he said he is not in the habit of doing that. His testimony clearly shows that Officer Saucedo had a very selective memory. He remembered very clearly that he treated the children very, very well, but he could not give any specific examples regarding his testimony. Remarkably, he assumed, and it's in the trial transcript, that the kids could not have been involved in smuggling Bosty. It never even occurred to him. He was somewhat surprised by that thought. After the cross-examination of Officer Saucedo, the immigration judge, I think, in displaying some bias, sought actively to rehabilitate the testimony of Officer Saucedo. He starts off with a lengthy declaration on how the officer's integrity could be impugned, how he could get into trouble for these types of acts, and then the immigration judge goes through and says, well, you haven't done this, have you, Officer Saucedo? And he goes, of course, no, no, no, no, no. The judge cites the three inconsistencies in finding the minor children's testimony incredible. He looks to what was happening in the car on the way to the border. He said what happened at the border while they were waiting to enter the inspection station, and also he differed on the alleged mistreatment at the port of entry. These three reasons are really insufficient looking at the testimony of Officer Saucedo versus the testimony of the minor children. The immigration judge also abused his discretion by failing to grant the change of venue to San Francisco after this case was remanded to the immigration court in San Diego. The government at this point had no witnesses to present after remand. Removability had already been established, and the prior immigration judge had already retired, so a new judge was assigned to hear the case. There was certainly no burden on the government to have the case transferred from San Diego to San Francisco. This was important because at this point, the Board of Immigration Appeals was requiring the petitioner to explain her inconsistencies in her asylum application. In order to do this, she had submitted evidence, a declaration from her husband regarding that he was a witness to the encounter with the military. There was an application from the brother who was the police officer in Honduras and a statement from him regarding his asylum claim in San Francisco, and he was also president of San Francisco, and also evidence that a niece had been granted asylum for similar reasons in San Francisco. The reason why the husband could not be present in San Diego at that time, even though he had been present previously, is because he had been diagnosed with cancer and could not travel. It was about a 14-hour drive and a 500-mile trip. The immigration judge cites no reason why he could not grant the change of venue, even though there was no inconvenience to the government. What was the prejudice from that ruling? The prejudice from the ruling is, well, I think it's twofold. First of all, there was documentary evidence in the record that the judge ignores. The second immigration judge would consider the case on remand. The BIA sought to clean that up on appeal and looked at the evidence, but he doesn't cite to the evidence that was submitted into the record. Secondly, we were unable to present those three witnesses to testify as to the credibility of the claim that the petitioner made regarding her asylum application. The husband was there in Honduras at the time of the military incident. Her claim was based on persecution of her brother, who was a police officer in Honduras. He was president of San Francisco and had his own asylum application, and the petitioner's niece was granted asylum on the same or similar grounds. Those were very strong reasons why she should have been able to have a change of venue granted to San Francisco so she could have corroborated her claim to asylum, and that's specifically why the case was remanded to the immigration judge. The change of venue prevented the petitioner from being able to make that showing. And I think even though there were documents placed into the record, the immigration judge failed to consider those documents. The petitioner did address the inconsistencies of her asylum claim. On remand, the petitioner presented evidence, as I've already stated, from the declarations from her husband, her brother, and the niece that were granted asylum. The failure to grant the change of venue prevented these witnesses from testifying. This error really would require this matter to be remanded for further fact-finding to the courts so she would be able to present that evidence, and it's not proper that the Board of Immigration Appeals would consider that evidence initially. They are not finders of fact. They're an appellate body, and that evidence really wasn't fully presented to the court. The immigration judge failed to consider the new country-conditioned evidence on remand and disposed of the CAC claim, the Convention Against Torture claim, based on his adverse credibility finding. This also, we believe, was error. The BIA, as I have already alluded to, erred as an appellate body in considering this evidence on appeal. And again, the appropriate remedy was to remand for additional fact-finding of this matter. If there aren't any questions, I'll go ahead and reserve. I'm sorry, I have a cold. I hope my voice hasn't been too difficult to listen to. Thank you. Good morning. May it please the Court, this is Dana Cammelaer for the Attorney General. This case is all about credibility. Petitioner's counsel did not challenge the credibility findings in his opening brief, so we submit that that was waived, and that pretty much disposes of the majority of the issues he raises. The immigration judge found that Petitioner and her two daughters were not credible witnesses. Their testimony was inconsistent, contradictory. There is a demeanor finding for the youngest child, and they also contradicted their written statements, and this was in terms of to support a motion to terminate proceedings. And that is just positive over his claim that the I-213 should be suppressed. I understand that he's claiming that CBP, there was CBP misconduct in 2007. I mean, it doesn't dispose of the question of possible coercion. Well, it does because their story is not credible, and therefore the IJ did not take it as credible. No, but, I mean, if the statement was coerced, why does credibility matter? I mean, when we went in the criminal context, we don't go to the merits of the statement in determining whether or not it should be suppressed or not. Why should the rule be different here? Well, Your Honor, for a motion to terminate, she needed to make a prima facie showing of CBP misconduct and that the admissions in the I-213 were either obtained by coercion or were otherwise unreliable. That's what the hearing was of the multiple merits hearings in support of that. Now, it's based on what the two minor children claim happened to them, and it's that testimony which is inconsistent. It's contradictory. He doesn't address the eldest daughter who was 18 at the time of the merits hearing. She wrote in her statement that her father was outside and she was harassed by CBP officers. She testified that didn't happen, that her father wasn't present. She and Leslie are inconsistent about. Wait a second. If we just look at the Border Patrol's officer's testimony, according to him, the government held the two children, ages 11 and 14, for roughly 15 hours without their mother in an area that was designed not for kids but for adults with only a pile of blankets, no food, no water, and questioned them at that time. Taking that testimony, how could that not have been a coercive interrogation? That was not the officer's testimony. I'm sorry, Your Honor. And I believe if I could direct you to AR 613, 615 is 16, 618 is 675, and 610 to 11, he discusses that at the time, in 2007, children were given a stack of blankets. The room that they were kept had a drinking water, a bathroom. They could watch television, and they were provided regular meals at every six-hour intervals and could request food. So that is the CBP officer's testimony. He does say that he gave short 10-minute interviews with them because the story that their mother was providing was that this 3-year-old had independently changed out of her pajamas, left the house, climbed into the third row of the Yukon. What was the reason that the petitioner's interrogation was videotaped but the children's interrogation was not videotaped? The officer stated that he could not find a supervising officer to okay the videotape of minors, and he was uncomfortable doing it on his own authority. How do we know whether anything he says is credible? Because he gave consistent testimony over two merits hearings concerning what happened and what he remembered, and he admitted he didn't remember everything. He remembered that the petitioner's story was unbelievable, and that's why he wanted to ask the minors, along with his partner, what had happened, but that he had never threatened minor children in his career and that he had not done so here. And there's reason, there's a lot of doubt on what the petitioner is claiming and what her daughters are claiming. Basically, all of his testimony, he doesn't remember anything. He just rests on what he customarily would have done. Would you agree with that? No, Your Honor. He remembers certain things. He remembers the story that the child, that the 3-year-old got in by herself, and he didn't think, having children himself, that that was particularly believable. But he didn't remember, you know, every single thing about the interaction. He remembered who his partner was, that they were 10-minute interviews. And again, petitioner waived this in his opening brief. He does not challenge this. He argues bias. He argues bias, but he does not challenge the actual basis for the adverse credibility determination. But you would agree that the examination occurred over 16 hours? I don't believe so. It's supposed to have been two 10-minute. Yes, they were separated because they were trying to process their mother. I believe even they say they were fingered together for fingerprinting. Right. No, they were detained for 16 hours and intermittently questioned. Right. There was no adult to release them to. I'm not asking why. I'm just saying I want to confirm my understanding of the record. I believe it was somewhere between 12 and 16 hours. Are you contesting the petitioner's standing to, you know, challenge the admission of these minors' statements? No. Our argument that we raised in our brief, and even if we want to say he didn't waive it, he didn't address the specific basis for why the children and the mother were not credible during their merits hearing testimony, and therefore he can't compel a different result. If we don't accept their testimony as true because it's not credible, we're left with a CBP officer's testimony, and they haven't made a prima facie showing for suppression. Are there any other questions from the panel? Not from me. Anything else you want to? I guess the one thing I do want to clarify about what happened on remand, the specific language of the board's remand decision was for her to have an opportunity to be confronted with the inconsistencies in her testimony for her asylum application, and she declined to testify and rehabilitate. It wasn't for her to bring in other witnesses. And so we don't think that the denial of a motion to change venue abused the IJ's discretion. Thank you, counsel. Thank you. Rebuttal. Yes, just briefly. The reason for the remand by the BIA was an opportunity to explain the inconsistencies between her application and her testimony. And it said on remand, and I'm quoting from the BIA decision, she should provide the opportunity to do so. It doesn't say that she was the only person that could have testified as to the inconsistencies in her application and her in-court testimony. It said she should be provided an opportunity to do so, and whether she could do that through her own testimony or through other witnesses, really she's not restrained from doing that. If she has corroboration of any sort, she should have been able to provide that. Are you saying, like, for instance, someone else, her husband or brother or somebody, could testify to why there were these inconsistencies? Yes, to some degree. Did you make an offer of proof to the IJ? And the husband was actually present during, as pointed out by the government, he was present during the first hearing, and he did have some information that he wanted to offer the court. Some of that came in obviously. In fact, didn't he file an affidavit? He did. It was not considered by the immigration judge. But he had the opportunity to file it then. He did, and it was argued the immigration judge. Is it an affidavit that explained the inconsistencies between her two statements? No, not fully. It explained why she had claimed fear of return to Honduras, but that there was not specifics in there why it was inconsistent. But certainly it could have been provided in in-court testimony. But the immigration judge, in any case, didn't consider that. It was argued in front of the second immigration judge after remand that the judge said, well, what are you going to rely on if you're not going to have the respondent testify in those proceedings, Leslie, the petitioner here? And I said I would rely on the documentary evidence that was already submitted. He never considered it in his decision, and the board then attempted to kind of whitewash over that error and say, well, we looked at it and there's no reason to disturb it. We're still going to leave the decision as it is. Thank you. Thank you, counsel. The case just turned will be sent for decision.
judges: Thomas, Tashima, Wardlaw